**No. 25-11215**

---

# UNITED STATES COURT OF APPEALS FOR THE ELEVENTH CIRCUIT

---

**UNITED STATES OF AMERICA**
***Appellee,***

**v.**

**VICTOR MCMILLAR**
***Appellant.***

---

On Appeal from the United States District Court
for the Southern District of Georgia, Savannah Division

## APPELLANT'S OPENING BRIEF

**Tina E. Maddox**
Georgia Bar No. 465511
Attorney for Appellant
Law Office of Tina E. Maddox, LLC
P.O. Box 1343
Vidalia, GA 30475
Ph. 912-537-3025
tina@tinamaddoxlaw.com

July 14, 2025

# CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

Pursuant to Eleventh Circuit Rule 26.1, Appellant Victor McMillar certifies that the following persons and entities may have an interest in the outcome of this case:

1. Baker, R. Stan – Chief Judge, United States District Court, Southern District of Georgia;
2. Jonese, Makeia R. – Special Assistant United States Attorney;
3. Lasry, Rachel – Special Assistant United States Attorney;
4. Lyons, Tara M. – Acting United States Attorney;
5. Chang, Emily – Acting United States Attorney;
6. Maddox, Tina – Trial and appellate counsel for Victor McMillar;
7. Mr. McMillar, Victor – Appellant;
8. Ray, Christopher L. – United States Magistrate Judge;
9. Talbot, Frank – Special Assistant United States Attorney;
10. United States of America – Appellee;

No publicly traded company or corporation has an interest in the outcome of this appeal.

July 14, 2025

/s/ Tina E. Maddox
Tina E. Maddox

## STATEMENT REGARDING ORAL ARGUMENT

The Appellant does not request oral argument.

# TABLE OF CONTENTS

**CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT ........ C-1**

**STATEMENT REGARDING ORAL ARGUMENT ........ I**

**TABLE OF AUTHORITIES ........ IV**

**STATEMENT OF JURISDICTION ........ 1**

**STATEMENT OF THE ISSUES ........ 2**

**STATEMENT OF THE CASE ........ 4**

**STANDARD OF REVIEW ........ 14**

**SUMMARY OF THE ARGUMENT ........ 16**

**ARGUMENT ........ 19**

I. THE GOVERNMENT VIOLATED MCMILLAR's DUE PROCESS RIGHTS BY ELICITING FALSE GRAND JURY TESTIMONY ........ 19

A. Mr. McMillar Did Not Waive His Challenge to False Grand Jury Testimony Because the Extent of that False Testimony Was Not Discoverable Until Trial ........ 20

B. The False Grand Jury Testimony Violated *Giglio* and Amounted to Structural Error ........ 22

1. Agent Vance's Falsehoods Were Material and Foundational ........ 22

2. The Government Had a Duty to Not Present Evidence It Should Have Known Was False ........ 24

3. The Violation Was Structural and Not Subject to Harmless Error Analysis ........ 25

II. THE GOVERNMENT'S EVIDENCE WAS INSUFFICIENT TO CONVICT MR. MCMILLAR ........ 26

III. THE DISTRICT COURT ABUSED ITS DISCRETION IN ADMITTING UNDULY PREJUDICIAL AND CUMULATIVE SHOOTING EVIDENCE ........ 31

IV. THE DISTRICT COURT PLAINLY ERRED IN ADMITTING A TEXT MESSAGE FROM THE HOMICIDE VICTIM ........ 34

V. THE DISTRICT COURT ERRED IN EXCLUDING EVIDENCE OF MR. MCMILLAR'S PRIOR ACQUITTAL ........ 37

VI. THE DISTRICT COURT ERRED IN ENHANCING MR. MCMILLAR'S SENTENCE BASED ON ACQUITTED CONDUCT ........................................38

VII. CUMULATIVE ERROR DENIED MR. MCMILLAR A FAIR TRIAL....41

**CONCLUSION.........................................................................................42**

**CERTIFICATE OF COMPLIANCE ..................................................44**

**CERTIFICATE OF SERVICE ...........................................................44**

# TABLE OF AUTHORITIES

**Cases**


*Bank of Nova Scotia v. United States*, 487 U.S. 250 (1988) .......... 25

*Crane v. Kentucky*, 476 U.S. 683 (1986) .......... 38

*McClinton v. United States*, 143 S. Ct. 2400 (2023) .......... 40

*Mooney v. Holohan*, 294 U.S. 103 (1935) .......... 22

*Napue v. Illinois*, 360 U.S. 264 (1959) .......... 22, 24

*Smith v. Secretary, Dept. of Corrections*, 572 F.3d 1327 (11th Cir. 2009) .......... 24

*United States v. Arbolaez*, 450 F.3d 1283 (11th Cir. 2006) .......... 14, 32

*United States v. Baker*, 432 F.3d 1189 (11th Cir. 2005) .......... 15, 41

*United States v. Duenas*, 891 F.3d 1330 (11th Cir. 2018) .......... 27

*United States v. Ellisor*, 522 F.3d 1255 (11th Cir. 2008) .......... 33

United States v. Hands, 184 F.3d 1322 (11th Cir.1999) .......... 15

*United States v. Hill*, 643 F.3d 807 (11th Cir. 2011) .......... 14, 32

*United States v. Jernigan*, 341 F.3d 1273 (11th Cir. 2003) .......... 27

*United States v. Jiminez*, 564 F.3d 1280 (11th Cir. 2009) .......... 14, 26

*United States v. Lehder-Rivas*, 955 F.2d 1510 (11th Cir. 1992) .......... 34, 36

*United States v. Martin*, 803 F.3d 581 (11th Cir. 2015) .......... 27

*United States v. Mechanik*, 475 U.S. 66 (1986) .......... 25

*United States v. Olano*, 507 U.S. 725 (1993) .......... 36

*United States v. Rothenberg*, 610 F.3d 621 (11th Cir. 2010) .......... 15, 39

*United States v. Sperrazza*, 804 F.3d 1113 (11th Cir. 2015) .......... 14, 20, 21

*United States v. Stein*, 846 F.3d 1135 (11th Cir. 2017) .......... 14, 20

*United States v. Troya*, 733 F.3d 1125 (11th Cir. 2013) ........................................32

*United States v. Turner*, 474 F.3d 1265 (11th Cir. 2007)........................................14

*United States v. Wright*, 392 F.3d 1269 (11th Cir. 2004)................................ 27, 30

*Vasquez v. Hillery*, 474 U.S. 254 (1986) ..........................................................25

**Statutes**

18 U.S.C. § 3231 ...........................................................................................1

18 U.S.C. § 922(g)(1)........................................................................... passim

28 U.S.C. § 1291 ...........................................................................................1

**Other Authorities**

U.S.S.G. §1B1.3 ...........................................................................................39

U.S.S.G. §2A1.1 .......................................................................................3, 38

U.S.S.G. §2K2.1 .......................................................................................3, 38

**Rules**

Federal Rule of Criminal Procedure 12 ............................................... passim

Federal Rule of Evidence 401 ........................................................................37

Federal Rule of Evidence 403 ................................................... 2, 17, 32, 35

Federal Rule of Evidence 404(b) ............................................... 2, 17, 32, 33

Federal Rule of Evidence 803 ........................................................................38

Federal Rule of Evidence 807 ........................................................................38

## STATEMENT OF JURISDICTION

The District Court had subject-matter jurisdiction under 18 U.S.C. § 3231 because Mr. McMillar was indicted for federal criminal offenses. [Doc. 1].[1] This Court has appellate jurisdiction under 28 U.S.C. § 1291 because the District Court entered final judgment against Mr. McMillar on April 2, 2025 and he timely filed a notice of appeal on April 4, 2025. [Docs. 183, 184].

[1] Pursuant to 11th Cir. R. 28-5, references to the record in a brief must be to document number and page number. This brief cites to transcripts by the document number reflected on the docket sheet and the page number assigned by the court reporter.

## STATEMENT OF THE ISSUES

1. **False Grand Jury Testimony / Rule 12(b)(3) / *Giglio* Violation:** Whether the District Court erred in denying Mr. McMillar's Motion for New Trial and Motion for Judgment of Acquittal where the Government presented material false testimony to the grand jury, which it should have known was false, and the full extent of the falsehoods was not discoverable until trial.

2. **Sufficiency of the Evidence:** Whether the evidence at trial — comprised entirely of circumstantial and speculative testimony — was insufficient as a matter of law to prove beyond a reasonable doubt that Mr. McMillar knowingly possessed a firearm and ammunition in violation of 18 U.S.C. § 922(g)(1).

3. **Prejudicial Murder Evidence:** Whether the District Court abused its discretion by admitting graphic crime scene photographs and extensive testimony about two murders when that evidence was neither intrinsic to the charged conduct nor admissible under Federal Rule of Evidence 404(b), and where its probative value was substantially outweighed by unfair prejudice under Federal Rule of Evidence 403.

4. **Text Messages Regarding a Firearm Accessory:** Whether the District Court plainly erred in admitting a text message requesting that Mr. McMillar's

girlfriend purchase a firearm magazine, where the message was irrelevant to the charged conduct and highly prejudicial.

5. **Exclusion of State Court Acquittal:** Whether the District Court erred in excluding evidence that Mr. McMillar had been acquitted in Georgia State Court of murders underlying the § 922(g)(1) charges, despite the Government's admission that its evidence would "replicate" the State of Georgia's evidence.

6. **Sentencing Enhancement Based on Acquitted Conduct:** Whether the District Court erred in enhancing Mr. McMillar's sentence under U.S.S.G. §2K2.1(c)(1)(A) and U.S.S.G. §2A1.1(a) for first-degree murder, when a jury in Georgia State Court had acquitted him of that same conduct and the federal case was based on the same evidence.

7. **Cumulative Error:** Whether the cumulative effect of the District Court's evidentiary errors and exclusion of acquittal evidence, and the Government's reliance on false grand jury testimony and weak circumstantial evidence, deprived Mr. McMillar of his right to a fair trial.

## STATEMENT OF THE CASE

### *Procedural Background*

On December 17, 2018, Victor McMillar was arrested in connection with two separate shootings on November 3 and November 5, 2018. [Doc. 166, p. 17]. The State of Georgia eventually charged him with sixteen counts, including possession of a firearm by a convicted felon. [Doc. 166, p. 17]. Mr. McMillar has insisted on his innocence of these charges from the beginning of his State proceedings through this appeal.

During the pendency of Mr. McMillar's state proceedings, Georgia prosecutors determined that the lead investigator on Mr. McMillar's case — former Officer Ashley Woods — lied on a search warrant application related to Mr. McMillar during her investigation of the November 3 and 5, 2018 shootings. Woods was eventually fired and prosecuted for perjury. [Doc. 147, p. 7 (Def. Ex. 5)]. In a related evidentiary hearing, Mr. McMillar's State counsel recognized that, among other things, an alleged recording of an interview former Officer Woods conducted with witness Javaree Rowe did not exist. [Doc. 179, pp. 6–7; Doc.149-1, p.10].

On October 17, 2023, a Georgia jury acquitted Mr. McMillar on all of the charges against him, including murder, aggravated assault, and being a felon in possession of a firearm. [Doc. 166, p. 17].

On November 1, 2023, nearly five years after the November 3 and November 5, 2018 shootings, Mr. McMillar was indicted in the United States District Court for the Southern District of Georgia on two counts of possession of a firearm and ammunition by a prohibited person, in violation of 18 U.S.C. § 922(g)(1). [Doc. 1]. The federal charges concerned the same firearm and the same shootings as those involved in the earlier state prosecution.

On October 21, 2024 Mr. McMillar proceeded to trial on his two federal § 922(g)(1) charges. At trial, the Government presented evidence that it frankly acknowledged would "replicate that presented in [Mr. McMillar's] state trial." [Doc. 88, p. 8]. On October 24, 2024, a federal jury convicted Mr. McMillar on both counts. [Doc. 183]. Mr. McMillar is currently incarcerated due to this conviction. [Doc. 183].

On November 7, 2024, Mr. McMillar filed a combined motion for a new trial under Rule 33 or, in the alternative, for a judgment of acquittal under Rule 29. [Doc. 149]. Among other grounds, the motion raised false Grand Jury testimony that violated Mr. McMillar's due process rights, insufficiency of the evidence, prejudicial admission of crime scene evidence, admission of a prejudicial text message, exclusion of the fact of Mr. McMillar's prior state acquittal, and cumulative error. On March 25, 2025, the District Court denied the motion, despite

finding that ATF Agent Ichiro Vance had lied to the grand jury to secure Mr. McMillar's indictment. [Doc. 179].

On April 2, 2025, the District Court sentenced Mr. McMillar to 240 months' imprisonment based on an enhancement for use of the charged firearm in furtherance of the alleged commission of first-degree murder — conduct for which Mr. McMillar had been acquitted in state court. [Doc. 182, p. 1; Doc. 166, pp. 10–11]. Judgment was entered the same day. [Doc. 183]. Mr. McMillar timely filed a notice of appeal. [Doc. 184].

This appeal follows nearly seven years after Mr. McMillar's initial arrest — a period during which he has been continuously incarcerated while insisting on his innocence.

## ***Statement of Facts***

### *Evidence Presented Before the Grand Jury*

On November 1, 2023, the Government presented evidence to a federal grand jury and procured the indictment of Mr. McMillar on two counts of violating 18 U.S.C. § 922(g)(1), or possession of a firearm or ammunition by a convicted felon. [Doc. 1]. The only law enforcement officer who testified before the federal grand jury was ATF Special Agent Ichiro Vance. [Doc. 179, p. 4].

Agent Vance described himself as the "lead federal case agent" on the case against Mr. McMillar and distinguished his investigation from that of state

investigator Ashley Woods, who he acknowledged was then being investigated by the FBI for making false statements to obtain a search warrant to obtain Mr. McMillar's DNA. [Doc. 179-2, pp. 7–8].

Agent Vance went on to relate evidence gathered in the state's investigation of Mr. McMillar. In particular, he described two interviews with key Government witness Javaree Rowe:

> Q. Let's go to the next witness, JaVaree Rowe. Was JaVaree Rowe interviewed by law enforcement multiple times?
>
> A. Yes.
>
> Q. Did you review written reports by local law enforcement summarizing both of these interviews?
>
> A. Yes.
>
> Q. **Did you also personally listen to both of Rowe's interviews?**
>
> A. **Yes.**
>
> Q. Were the statements that JaVaree Rowe provided to law enforcement consistent on both interviews?
>
> A. No.
>
> Q. **Let's discuss the first statement on the first interview of JaVaree Rowe. Is there a recording of this interview?**
>
> A. **There is.**
>
> Q. **Again, did you personally listen to the interview?**
>
> A. **Yes.**
>
> Q. **What is the date of that first interview with JaVaree Rowe and local law enforcement?**

A. **One moment. November 4th, 2018.**

[Doc. 179-2, pp. 14–15] (emphasis added).

As further explained below, in its Order Denying Mr. McMillar's Motion for a New Trial and Judgment of Acquittal, the District Court found that:

> Vance's testimony that he listened to Rowe's first interview conducted on November 4, 2018, was false. Former Savannah Police Department Investigator Ashley Wood interviewed Rowe on November 4, 2018, and her summary of that interview indicates she recorded it. But Vance could not have listened to that recording because, if it ever existed, law enforcement lost it before Vance's involvement in the case.

[Doc. 179, p. 6].

The District Court further stated that "[h]aving carefully reviewed the entirety of the record, the Court reaches an unfortunate but unmistakable conclusion: ATF Special Agent Ichiro Vance lied to the grand jury when he testified that he listened to a recording of Rowe's November 4, 2018, interview." [Doc. 179, p. 8].

Vance also falsely testified about ballistics reports. He told the Grand Jury that the same firearm used in a November 3, 2018 shooting was also used in a November 5, 2018 shooting. [Doc. 179-2, p. 48]. Indeed, he asserted that local law enforcement had shell casings from both crime scenes analyzed and that analysis concluded the shells were fired from the same gun. [Doc. 179-2, pp. 37–39, 49–50]. In fact, as the Government now acknowledges, neither local authorities nor the United States had compared the shells from the crime scenes. [Doc. 179, pp. 8–9].

As to this testimony, the District Court found that "Vance's false grand jury testimony that the same firearm was used to commit both shootings was likely due to indolence and not intentional deception." [Doc. 179, p. 9].

*Evidence Presented at Trial*

<u>Background: The November 3 and 5, 2018 Shootings</u>

On November 3, 2018, Donte and Desiree Chisholm were shot outside a residence in Savannah, Georgia. [Doc. 154, pp. 12, 20–22]. Mr. Chisholm died and Ms. Chisholm was badly injured. [Doc. 154, pp. 12, 20–22]. On November 5, 2018, Jamall Johnson was shot and killed near an intersection in Savannah. [Doc. 154, pp. 35–37]. A Government witness testified based on a ballistics analysis that the firearm used in the Chisholm shooting, a .40 caliber Smith & Wesson pistol, was found on the body of Jamall Johnson after he was shot on November 5. [Doc. 154, pp. 51–53, 215–16].

The Government's theory of the case was that Mr. McMillar shot the Chisholms on November 3, 2018 with a .40 caliber Smith & Wesson pistol — and thus possessed the firearm and ammunition charged in Count 1 of the indictment — and then Mr. McMillar shot Mr. Johnson with a different firearm on November 5, 2018, but then planted the .40 caliber Smith & Wesson pistol on Johnson — and thus possessed the firearm and ammunition charged in Count 2. [Doc. 156, pp. 35–37, 52, 61–63].

<u>November 3, 2018 Witness Testimony and Cell Phone Data</u>

Desiree Chisholm testified that she saw a tall man in a hoodie firing a gun at her and her husband from the porch of a house, but she could not identify the shooter. [Doc. 154, p. 20].

Javaree Rowe testified that he, Jamall Johnson, and Mr. McMillar were present among other persons at the November 3 shooting. [Doc. 154, p. 135]. Rowe did not see who shot the Chisholms as he immediately ran when the shooting started. [Doc. 154, pp. 144–45]. He was also on drugs at the time. [Doc. 154, p. 155]. He testified that the shots came from the direction of an area of a porch where Mr. McMillar had been standing, but Rowe also could not recall where Johnson was standing. [Doc. 154, pp. 144–45]

Rowe admitted he had told markedly different versions of the events of November 3, 2018 to the police during an initial police interview with former officer and indicted perjurer Ashley Woods. [Doc. 154, p. 152]. Indeed, he told Woods that he was not even at the scene of the November 3, 2018 shooting. [Doc. 154, p. 152–54]. Then, after Woods asked him to turn over his own hooded sweatshirt for analysis, Rowe changed his story upon Woods' suggestion and stated that Mr. McMillar had been present at the November 3 shooting. [Doc. 154, p. 155]. Rowe also testified that he was currently serving a probationary sentence for stealing a gun. [Doc. 154, p. 168].

The Government also presented evidence that a cell phone associated with Mr. McMillar was in the area of the November 3 shooting. [Doc. 154, p. 287–90].

November 5, 2018 Cell Phone Data, DNA Evidence

As to the November 5, 2018 shooting, the Government presented evidence that a cell phone associated with Mr. McMillar was in contact with Jamall Johnson before the shooting and was in the area when Johnson was shot. [Doc. 155, pp. 46, 53–59]. However, the Government witness admitted that this cell phone information could not provide specific location data and that a number of variables — such as network usage, tower functioning, and building characteristics — could have affected the data. [Doc. 155, pp. 64–68, 72]. Moreover, the Government did not present evidence that Mr. McMillar actually possessed the cell phone at the time of the shooting. [Doc. 155, p. 72].

The .40 caliber handgun used in the Chisholm shooting was found in Johnson's waistband at the time of his death. [Doc. 154, pp. 51–53, 215–16]. A Government witness testified that it was not in a normal position, [Doc. 154, p. 52], but later admitted on cross-examination that it was "not unusual" for individuals to carry handguns in waistbands. [Doc. 154, p. 66].

DNA testing of the recovered firearm identified Mr. McMillar as one of three contributors to a mixture of DNA found on the firearm. [Doc. 154, p. 183]. However,

a Government expert admitted that Mr. McMillar's DNA sample could have been on the firearm due to secondary transfer — for instance, Mr. McMillar could have shaken hands with Jamall Johnson who later touched the firearm and in doing so transferred Mr. McMillar's DNA to the firearm. [Doc. 154, pp. 192–93]. The expert expressly admitted that she could not tell the jury how Mr. McMillar's DNA ended up on the firearm. [Doc. 154, p. 193] ("DNA cannot tell you when [DNA] got on the item. It cannot tell you how it got on the item. . . .").

Other Evidence

The Government introduced data from an iCloud account allegedly linked to Mr. McMillar, which included photos of firearms. [Doc. 155, pp. 228–32, 250–55]. A Government witness testified that one of the firearms in the photo resembled the firearm used in Chisholm shooting and found on Jamall Johnson, but was unable to identify it as the firearm in question. [Doc. 155, pp. 250–55, 259–60].

The Government introduced a text message sent from Jamall Johnson to Mr. McMillar, in which Johnson asked Mr. McMillar's girlfriend to order a "pro meg xd 40" magazine from an online retailer. [Doc. 155, p. 210]. There was no evidence that Mr. McMillar responded to this request. [Doc. 155, p. 210].

The Government presented more than 20 crime scene photographs from both shootings, including images of the shooting victims. [Doc. 153, pp. 156–60; Doc.

154, pp. 40–42]. In particular, Government exhibits 41–44 included photographs of Jamall Johnson's body that were unnecessary for the jury to understand the facts surrounding an alleged violation of § 922(g)(1). [Doc. 154, pp. 40–42, Doc. 147, pp. 2–3 (Gov. Exs. 41–44)].

The Government also presented cumulative testimony from a ShotSpotter analyst regarding the number, location, and timing of gunshots during the November 5 shooting, despite those facts not being at issue. [Doc. 155, pp. 88–93].

Mr. McMillar's counsel argued at trial that other individuals — including Javaree Rowe and Jamall Johnson — were much more likely to have been the persons who possessed the firearm in question and used it during the November 3, 2018 shooting. [Doc. 156, pp. 66–71]. Furthermore, Mr. McMillar attempted to introduce his state court acquittal of the same charges, but the District Court ruled the acquittal inadmissible. [Doc. 153, pp. 99–101].

## STANDARD OF REVIEW

1. **False Grand Jury Testimony / Rule 12(b)(3) / Giglio Violation:** Whether Mr. McMillar waived his challenge under Rule 12(b)(3) is reviewed de novo. *United States v. Sperrazza*, 804 F.3d 1113, 1119 (11th Cir. 2015). The Court also reviews de novo whether the Government's conduct violated *Giglio* and due process. *United States v. Stein*, 846 F.3d 1135, 1145 (11th Cir. 2017).

2. **Sufficiency of the Evidence:** A challenge to the sufficiency of the evidence to sustain a conviction is reviewed *de novo*, viewing the evidence in the light most favorable to the Government. *United States v. Jiminez*, 564 F.3d 1280, 1284 (11th Cir. 2009).

3. **Evidentiary Rulings:** The Eleventh Circuit reviews evidentiary rulings for abuse of discretion, *United States v. Hill*, 643 F.3d 807, 843 (11th Cir. 2011), and will overturn a verdict where there is a "significant possibility" that "considering the other evidence presented by both the prosecution and the defense, [an error] has a substantial impact upon the verdict of the jury." *United States v. Arbolaez*, 450 F.3d 1283, 1290 (11th Cir. 2006). Where an objection is not preserved below, review is for plain error. *United States v. Turner*, 474 F.3d 1265, 1275 (11th Cir. 2007). Plain error exists where there is (1) error, (2) that is plain, (3) that affects substantial rights, and (4) that

seriously affects the fairness, integrity, or public reputation of judicial proceedings.

4. **Sentencing Enhancement Based on Acquitted Conduct:** The Eleventh Circuit reviews a district court's interpretation of the Guidelines with deference and its factual findings for clear error. *United States v. Rothenberg*, 610 F.3d 621, 624 (11th Cir. 2010).

5. **Cumulative Error:** The cumulative error doctrine considers whether multiple errors, considered together, so infected the trial with unfairness as to deny due process. *United States v. Baker*, 432 F.3d 1189, 1223 (11th Cir. 2005). The Eleventh Circuit "determine[s] whether an error had substantial influence on the outcome by weighing the record as a whole . . . examining the facts, the trial context of the error, and the prejudice created thereby as juxtaposed against the strength of the evidence of defendant's guilt." *See United States v. Hands*, 184 F.3d 1322, 1329 (11th Cir.1999) (internal quotations and citations omitted).

## SUMMARY OF THE ARGUMENT

This appeal arises from Victor McMillar's conviction of two violations of 18 U.S.C. § 922(g)(1) premised on weak circumstantial evidence, compounded by numerous procedural and evidentiary errors that undermined the fairness of Mr. McMillar's trial and sentencing. The District Court erred in multiple respects, and these errors individually and cumulatively require reversal or, at minimum, a new trial and resentencing.

First, Mr. McMillar's conviction was tainted from the outset by the Government's use of materially false testimony before the grand jury, the full extent of which was only revealed during trial. The District Court incorrectly ruled that the issue had been waived under Rule 12(b)(3), even though Mr. McMillar could not reasonably have discovered the full scope of the falsehoods prior to trial. The Government's failure to correct false testimony that it knew or should have known was false violated Mr. McMillar's due process rights under *Giglio v. United States*.

Second, the Government's case at trial rested entirely on speculative and circumstantial evidence. No eyewitness identified Mr. McMillar as possessing a firearm on either day alleged in the indictment. The Government's DNA evidence was partial and consistent with secondary transfer, its cell phone location data was imprecise, and photographs attributed to Mr. McMillar's iCloud account were never

connected to the firearm in question. The evidence was insufficient to support a conviction.

Third, the District Court improperly admitted highly prejudicial evidence concerning two homicides related to Mr. McMillar's alleged violations of § 922(g)(1), including graphic crime scene photographs and detailed testimony about the shootings. This evidence was neither intrinsic to the charged offense nor admissible under Rule 404(b), and its probative value was substantially outweighed by the danger of unfair prejudice under Rule 403.

Fourth, the District Court plainly erred by allowing the Government to introduce a text message from the murder victim to Mr. McMillar about purchasing a firearm magazine, even though the magazine was unrelated to the charged offense and was never shown to have been acquired. The message had no probative value and merely served to cast Mr. McMillar in a criminal light.

Fifth, while allowing extensive prejudicial evidence about the murders related to Mr. McMillar's alleged violations of § 922(g)(1), the District Court excluded evidence that Mr. McMillar had already been acquitted of those same murders in Georgia State Court — despite the fact that Government acknowledged that its evidence would "replicate" the state case. This exclusion denied the jury critical context.

Sixth, the District Court erred at sentencing by enhancing Mr. McMillar's sentence based on conduct for which he had been acquitted. In light of the Sentencing Commission's November 2024 amendment to §1B1.3 and the Government's own concession that its case would "replicate" Georgia's case against Mr. McMillar, the enhancement for first-degree murder undermines public trust in the justice system and violated the principles of fair sentencing.

Finally, even if no single error justifies reversal, the cumulative effect of the errors — particularly in the context of a case supported only by speculative evidence — denied Mr. McMillar a fair trial. Under the cumulative error doctrine, this Court should reverse the conviction or remand for a new trial.

# ARGUMENT

## I. THE GOVERNMENT VIOLATED MCMILLAR's DUE PROCESS RIGHTS BY ELICITING FALSE GRAND JURY TESTIMONY

The District Court held that ATF Special Agent Ichiro Vance made materially false statements to the grand jury to secure Mr. McMillar's indictment. Specifically, Agent Vance testified falsely that he (1) listened to a non-existent recording of a November 4, 2018 interview with key witness JaVaree Rowe, and (2) relied on forensic evidence that allegedly showed the same Smith & Wesson .40 caliber firearm was used in both the November 3 and November 5 shootings — when, in fact, no such testing had been conducted at the time and, when later testing was conducted, the testing contradicted Agent Vance's testimony. The Court concluded that Vance had "lied to the grand jury" and "lacked credibility" in critical aspects of his testimony. [Doc. 179, p. 8].

Nonetheless, the Court denied Mr. McMillar's Motion for New Trial and Motion for Judgment of Acquittal. It ruled that the challenge to the indictment was waived under Federal Rule of Criminal Procedure 12(b)(3) and found no violation of *Giglio v. United States*, 405 U.S. 150 (1972), because the Court concluded that the prosecution lacked prior knowledge of Vance's falsehoods and that the testimony was not material. [Doc. 179, pp. 10–13].

Both conclusions were in error. First, the Rule 12(b)(3) waiver should not have applied where the falsehoods could not reasonably have been discovered or substantiated until trial. Second, the Government's failure to correct Vance's known falsehoods constituted a violation of *Giglio* and other foundational due process precedents. The violations here were not harmless but structural: they undermined the integrity of the indictment and the proceedings that followed.

The District Court's finding that Mr. McMillar waived his rights under Rule 12(b)(3) should be reviewed *de novo*. *See United States v. Sperrazza*, 804 F.3d 1113, 1119 (11th Cir. 2015). Likewise, whether the Government's conduct violated Mr. McMillar's due process rights under *Giglio* is reviewed de novo. *See United States v. Stein*, 846 F.3d 1135, 1145 (11th Cir. 2017).

### A. Mr. McMillar Did Not Waive His Challenge to False Grand Jury Testimony Because the Extent of that False Testimony Was Not Discoverable Until Trial

Rule 12(b)(3)(A)(v) requires that certain defenses — including defects in the institution of the prosecution — be raised prior to trial only if the basis for the motion is reasonably available and the motion could be determined without a trial on the merits. *See* Fed. R. Crim. P. 12(b)(3). The District Court erred in holding that Mr. McMillar's challenge to the integrity of the grand jury proceedings was waived, because the full scope and significance of Special Agent Ichiro Vance's false

testimony could not reasonably have been discovered or meaningfully litigated before trial.

While defense counsel had the transcript of Agent Vance's grand jury testimony prior to trial, it was not until trial — and under the pressure of cross-examination — that Agent Vance finally admitted that he "might have been mistaken" about the recording "to the extent that [he] reiterated the fact twice" during trial. [Doc. 155, p. 190]. Indeed, during Vance's initial direct examination he repeated the same lie he had told the grand jury. [Doc. 155, p. 176]. The District Court itself found that Vance "lied" when testifying about that recording during trial. [Doc. 179, p. 8].

To be sure, a State Court hearing long before Mr. McMillar's federal trial indicated that the recording did not exist, [Doc. 149-1, p. 10] — a fact that shows that the United States should have known Agent Vance's testimony was false. However, Mr. McMillar had no way to verify that non-existence until Agent Vance himself admitted as much on the witness stand.

The Eleventh Circuit recognizes that Rule 12(b)(3)'s timing requirement does not apply where the basis for the motion could not have been reasonably known earlier. *See Sperrazza*, 804 F.3d at 1118–19. A motion is not untimely where a defendant acts diligently upon learning the relevant facts. Here, Mr. McMillar raised

the issue in his post-trial motion under Rules 29 and 33 at the first procedural opportunity after the falsity was exposed.

To hold otherwise would mean that defendants must preemptively guess at the possibility of Government agents testifying falsely, file pretrial motions based on speculative challenges, and guess at facts not available until mid-trial. That is not the standard. The District Court's reliance on waiver under Rule 12(b)(3) to dismiss Mr. McMillar's challenge to the indictment was in error.

### B. The False Grand Jury Testimony Violated *Giglio* and Amounted to Structural Error

Mr. McMillar's conviction must be reversed because the Government relied on material testimony it should have known was false before the grand jury, in violation of *Giglio v. United States*, 405 U.S. 150 (1972), *Napue v. Illinois*, 360 U.S. 264, 269–70 (1959), and *Mooney v. Holohan*, 294 U.S. 103, 112 (1935). This was a foundational due process violation that tainted the entire prosecution from the outset, rising to the level of structural error that is not subject to harmless-error analysis.

#### *1. Agent Vance's Falsehoods Were Material and Foundational*

Special Agent Vance was the sole law enforcement witness before the grand jury and the only source of interpretive guidance for that body's decision to indict. [Doc. 179, p. 4]. He testified falsely in two respects:

First, Agent Vance claimed to have personally listened to a recording of a November 4, 2018 interview with eyewitness Javaree Rowe, in which Rowe

acknowledged he was not present at the scene of the November 3 shooting. [Doc. 179-2, pp. 14–15]. That recording did not exist — a fact the Government should have been aware of from prior state proceedings. [Doc. 149-1, p. 10]. The lie misrepresented both the existence of direct evidence and Vance's credibility as an independent evaluator of that evidence. This is particularly important in Mr. McMillar's case, where the lead investigator on the case brought against him by the State of Georgia — Ashley Woods — was indicted for perjury in relation to her investigation. [Doc. 147, p. 7 (Def. Ex. 5)].

Second, Agent Vance testified that the Smith & Wesson firearm named in the indictment was used in two separate shootings. [Doc. 179-2, p. 48]. But the ballistics evidence available to the Government at that time did not support that conclusion, and later testing affirmatively disproved it. [Doc. 155, pp. 192–94]. The Government had full access to this testing information and thus should have known Agent Vance's testimony was false.

Agent Vance's false statements were not tangential — they were central to the indictment. They misled the grand jury about key witness Javaree Rowe, the independence of Agent Vance's investigation and his lack of reliance on perjurer Ashley Woods, and the basic facts about the firearm Mr. McMillar was alleged to have possessed.

#### 2. *The Government Had a Duty to Not Present Evidence It Should Have Known Was False*

The Supreme Court has held that the prosecution violates due process when it presents evidence it *should know* is false, even if it was not the source of the falsehood. *Giglio*, 405 U.S. at 154; *Napue*, 360 U.S. at 269; *Smith v. Secretary, Dept. of Corrections*, 572 F.3d 1327, 1333-34 (11th Cir. 2009) ("*Giglio* claims occur[] where the undisclosed evidence reveals that the prosecution knowingly made false statements or introduced or allowed trial testimony that it knew or should have known was false."). Although the Supreme Court has never expressly extended *Giglio* to Grand Jury proceedings, the principles underlying *Giglio* make it applicable to Grand Jury testimony. *See Smith*, 572 F.3d at 1336 (treating *Giglio* claims as a subset of *Brady* claims and noting that "although the *Brady* principles might support it, the Supreme Court had never expressly extended *Brady* to false testimony before the grand jury.").

As the Supreme Court explained in *Giglio*, when the Government introduces false testimony it violates a Defendant's constitutional right to due process — not just his right to a fair trial. *See Giglio*, 405 U.S. at 155; *see also id.* at 153 ("This Court made clear that deliberate deception of a court and jurors by the presentation of known false evidence is incompatible with 'rudimentary demands of justice.'") And there is no reason that the Government's violation of Mr. McMillar's due

process rights should be excused merely because it occurred in testimony before a Grand Jury instead of a petit jury.

Here, the Government not only relied on false testimony but had access to a State Hearing transcript and forensic data that disproved the testimony. It was in a position to recognize the inconsistencies before the indictment, and certainly long before trial. Nevertheless, the Government still elicited the false testimony and made no effort to correct the record, either by notifying the grand jury or dismissing and re-presenting the case.

#### 3. *The Violation Was Structural and Not Subject to Harmless Error Analysis*

While the general rule under *United States v. Mechanik*, 475 U.S. 66 (1986), is that grand jury defects are rendered harmless by a trial conviction, that rule does not apply to structural or fundamental constitutional errors. *See Bank of Nova Scotia v. United States*, 487 U.S. 250, 256–57 (1988). A defect is structural when it so compromises the structural protections of the grand jury as to render the proceedings fundamentally unfair. *Id.* at 257. The Supreme Court has expressly held that such structural errors may require reversal even absent a specific showing of prejudice. See *Vasquez v. Hillery*, 474 U.S. 254, 260–64 (1986) (racial discrimination in grand jury selection as structural error).

Here, Vance's lies — endorsed and uncorrected by the Government — transformed the grand jury from an independent investigative body into an instrument of manufactured probable cause. This is not a case of simple mistake. It is a case where the indictment was secured by material perjury, and the Government allowed it to stand despite having the means and duty to fix it. Given the scope of Agent Vance's false testimony, the District Court's finding the Agent Vance "lied," and the fact that Agent Vance himself clearly relied on a State investigator who perjured herself, this Court should find a structural error and reverse Mr. McMillar's conviction.

## II. THE GOVERNMENT'S EVIDENCE WAS INSUFFICIENT TO CONVICT MCMILLAR

The Government's speculative evidence was insufficient to sustain Victor McMillar's convictions under 18 U.S.C. § 922(g)(1) for allegedly possessing a firearm and ammunition on November 3 and November 5, 2018.

A challenge to the sufficiency of the evidence to sustain a conviction is reviewed *de novo*, viewing the evidence in the light most favorable to the government. *United States v. Jiminez*, 564 F.3d 1280, 1284 (11th Cir. 2009). However, that deference does not extend to speculation, conjecture, or improbable inferences. A conviction must be reversed where no rational trier of fact could have found the essential elements — here, knowing possession — beyond a reasonable

doubt. The Eleventh Circuit applies this standard even in cases relying entirely on circumstantial evidence, but it has repeatedly held that such circumstantial proof must be grounded in reasonable inference, not guesswork. *United States v. Martin*, 803 F.3d 581, 587–88 (11th Cir. 2015) ("[I]f the government relie[s] on circumstantial evidence, reasonable inferences, not mere speculation, must support the conviction.") (internal quotation marks omitted); *United States v. Duenas*, 891 F.3d 1330, 1334 (11th Cir. 2018) (finding that a verdict cannot be upheld if it is based on "mere speculation").

To convict Mr. McMillar under U.S.C. § 922(g)(1), the Government needed to prove, among other things, that Mr. McMillar knowingly and intentionally possessed the .40 caliber Smith & Wesson firearm and ammunition named in the indictment. *United States v. Jernigan*, 341 F.3d 1273, 1279 (11th Cir. 2003). Knowing and intentional possession requires a showing of "ownership, dominion, or control." *United States v. Wright*, 392 F.3d 1269, 1273 (11th Cir. 2004).

On the November 3, 2018 count, the Government relied primarily on the testimony of a single eyewitness — JaVaree Rowe — and historical cell-site location data to establish that Mr. McMillar knowingly possessed a firearm. [Doc. 154, pp. 135, 287–90]. Both pieces of evidence were deeply flawed. Rowe was a cooperating witness with a strong incentive to win the Government's favor. [Doc. 154, p. 168]. Rowe admitted to lying to police during the early phases of the investigation and

changed his story over time. [Doc. 154, p. 152]. Indeed, he only stated that he was on the scene of the shooting after Officer Ashley Woods — an indicted perjurer — took a hooded sweatshirt from Rowe for analysis and suggested to Rowe that Mr. McMillar was on the scene as well. [Doc. 154, p. 154]. Moreover, Rowe did not testify that he saw Mr. McMillar possess or fire a firearm on November 3, 2018. [Doc. 154, p. 144]. Rather, Rowe — who admitted he was on drugs at the time of the shooting — testified merely that he heard (but did not see) shots fired from an area of a porch where Mr. McMillar had at one point stood during the evening. [Doc. 154, pp. 144, 155].

This kind of testimony — riddled with unclarity, motive to fabricate, and inconsistency — was not credible enough to sustain a conviction on its own, and no other evidence materially strengthened it. The Government's location data for November 3, 2018 merely showed that Mr. McMillar's phone was near the general area of the shooting. [Doc. 154, pp. 287–90]. This kind of evidence has limited value, especially because cell-site records reflect wide coverage areas and do not place a person at a precise location. [Doc. 155, pp. 64–68, 72]. Even accepting the data at face value, it does not prove that Mr. McMillar himself was at the scene, only that his phone was active nearby. [Doc. 155, p. 76]. More importantly, the Government offered no evidence showing that the phone was on Mr. McMillar's person at the time. [Doc. 155, p. 76]. Here, the location data was consistent with entirely innocent

conduct — such as Mr. McMillar simply being present in the general area where the shooting occurred. The Government asked the jury to make a series of speculative leaps: that Mr. McMillar had his phone, that he was at the precise scene, and that he was the one holding the gun. Such inferential stacking, without direct support, does not rise to the level required for criminal conviction.

The Government also failed to prove its case as to the November 5, 2018 Count. On this Count, the Government offered two pieces of circumstantial evidence: DNA "touch" evidence recovered from the firearm and cell phone data that allegedly placed Mr. McMillar near shooting victim Jamall Johnson. [Doc. 154, p. 183; Doc. 155, pp. 46, 53–59]. But none of this proved that Mr. McMillar knowingly possessed a firearm on November 5.

The DNA evidence failed to establish Mr. McMillar's possession of the firearm. As a preliminary matter, the DNA profile in question was recovered from a firearm found tucked into Jamall Johnson's waistband after Johnson was shot and killed on November 5, 2018. [Doc. 154, pp. 215–16]. The profile was mixed and Mr. McMillar was identified merely as one of three contributors to the sample. [Doc. 154, p. 183]. Moreover, the Government's forensic expert acknowledged that the DNA could have been the result of secondary transfer and that it was impossible to say when or how the DNA was deposited. [Doc. 154, pp. 192–93]. In other words, the DNA did not show that Mr. McMillar touched the gun on November 5 — or

ever. Rather, as the Government's expert testified, it was perfectly possible that Mr. McMillar touched Mr. Johnson's hand and then Mr. Johnson touched the firearm and thereby transferred Mr. McMillar's DNA to the firearm. [Doc. 154, p. 193] ("DNA cannot tell you when [DNA] got on the item. It cannot tell you how it got on the item. . . ."). Possession requires evidence that the defendant had dominion and control over the item on the date alleged in the indictment. *See Wright*, 392 F.3d at 1273. A partial, ambiguous DNA match that lacks temporal specificity is not sufficient.

The cellular data evidence related to November 5, 2018 merely showed that Mr. McMillar's cell phone and Mr. Johnson may have been near each other around the time Mr. Johnson was shot and killed. [Doc. 155, pp. 64–68, 72]. However, the Government failed to show any specific cell phone was in Mr. McMillar's possession. [Doc. 155, p. 76]. Nor could cell phone proximity evidence prove that Mr. McMillar somehow possessed a firearm found on Mr. Johnson's body.

Finally, the Government introduced a photo of a firearm allegedly taken from an online iCloud account associated with Mr. McMillar. [Doc. 155, pp. 228–32, 250–55]. However, the Government's expert could not say that the firearm in the photo was the same as the firearm charged in the indictment. [Doc. 155, pp. 259–60]. Moreover, Mr. McMillar was not in the photo and nothing in the photo indicated

that Mr. McMillar had ever exercised dominion or control over the firearm. [Doc. 147, p. 7 (Gov. Exs. 178–80)].

Taken together, the evidence on both Counts was circumstantial, speculative, and lacked the kind of certainty required to sustain a conviction. The Government did not produce a single witness who identified Mr. McMillar in possession of a gun. It did not present forensic evidence that definitively linked him to any firearm, let alone the Smith & Wesson firearm charged in the indictment. Instead, the Government relied on ambiguous cell phone evidence, a witness who lacked credibility and did not even see Mr. McMillar possess a firearm, and forensic results that proved too little. A rational jury could not have found guilt beyond a reasonable doubt on this record. Because the Government's case on both counts relied on stacking weak inferences and speculative assumptions, and because each element of possession lacked firm evidentiary support, the District Court erred in denying Mr. McMillar's motion for judgment of acquittal. The convictions should be reversed for insufficiency of the evidence.

## III. THE DISTRICT COURT ABUSED ITS DISCRETION IN ADMITTING UNDULY PREJUDICIAL AND CUMULATIVE SHOOTING EVIDENCE

The District Court erred in admitting extensive and inflammatory evidence concerning the November 3 and November 5, 2018 shootings that was unduly

prejudicial to Mr. McMillar and was neither intrinsic to Mr. McMillar's alleged violations of § 922(g)(1) nor admissible as "other acts" evidence under Rule 404(b). [Doc. 179, pp. 16–17].

This Court reviews evidentiary rulings for abuse of discretion, *United States v. Hill*, 643 F.3d 807, 843 (11th Cir. 2011), and will overturn a verdict where there is a "significant possibility" that "considering the other evidence presented by both the prosecution and the defense, [an error] has a substantial impact upon the verdict of the jury." *United States v. Arbolaez*, 450 F.3d 1283, 1290 (11th Cir. 2006).

The only charges brought against Mr. McMillar were two violations of § 922(g)(1). [Doc. 1]. While the Federal Rules of Evidence allow the government to introduce evidence that is "intrinsic" to the charged conduct, such evidence must be "integral and natural part" of testimony about the facts and circumstances. *See United States v. Troya*, 733 F.3d 1125, 1131 (11th Cir. 2013). Moreover, all evidence must pass Rule 403's balancing test that excludes evidence if its probative value is substantially outweighed by the danger of "unfair prejudice" or "needlessly presenting cumulative evidence." Fed. R. Evid. 403.

In this case, the Government fairly introduced evidence to establish the basic facts that (1) the firearm named in the indictment was used in a shooting on November 3, 2018, and (2) the firearm was found in the waistband of shooting victim Jamall Johnson victim on November 5, 2018. Such evidence was "integral and

natural" to an alleged violation of § 922(g)(1). However, the Government went far beyond merely establishing these facts. The Government introduced unnecessary crime scene photographs that showed the body of victim Jamall Johnson, [Doc. 147, pp. 2–3 (Gov. Exs. 41–44], and elicited detailed, cumulative testimony from a "ShotSpotter" expert that served no purpose other than to emphasize that a murder had occurred. [Doc. 155, pp. 88–93]. These materials were not integral to the possession charge under § 922(g)(1), and their prejudicial effect outweighed any marginal probative value.

Because this evidence was not intrinsic, the only permissible avenue for admission would be to satisfy Rule 404(b). But Rule 404(b) permits extrinsic evidence of other crimes, wrongs, or acts only when: (1) it is relevant to an issue other than character; (2) sufficient evidence supports a jury finding that the defendant committed the extrinsic act; and (3) its probative value is not substantially outweighed by prejudice. *United States v. Ellisor*, 522 F.3d 1255, 1267 (11th Cir. 2008).

None of these criteria were met. The fact that the firearm in question was associated with two murders makes it automatically highly prejudicial and likely to confuse the jury. And it is well established that inflammatory evidence "retains a sufficiently countervailing probative value only when less prejudicial evidence fails to describe sufficiently the motive and nature of the crime." *United States v. Lehder-*

*Rivas*, 955 F.2d 1510, 1518 (11th Cir. 1992). Here, the Government could and did establish the basic, integral facts of the shootings through other means. Unnecessary crime scene photos and cumulative testimony were simply insufficiently probative to outweigh their prejudicial nature. Second, there was insufficient evidence to establish that Mr. McMillar committed the extrinsic acts because he was acquitted of those acts in State Court. [Doc. 166, p. 17]. Finally, the fact that the Government's evidence sought to establish an inference that Mr. McMillar likely committed two murders — crimes for which Mr. McMillar had already been acquitted in State Court — goes directly to Mr. McMillar's character in the eyes of jury.

This evidentiary error materially contributed to the verdict. As discussed above, the Government's case rested on a thin, circumstantial case that it admitted would "replicate" the evidence that led to Mr. McMillar's acquittal in State Court. [Doc. 88, p. 8]. The prejudicial impact of murder scene photographs and ShotSpotter testimony — neither necessary nor narrowly tailored — shifted the jury's focus away from the charged offense and toward crimes for which Mr. McMillar was never convicted. That shift undermined the fairness of the trial and compels reversal.

## IV. THE DISTRICT COURT PLAINLY ERRED IN ADMITTING A TEXT MESSAGE FROM THE HOMICIDE VICTIM

The District Court erroneously admitted text messages from homicide victim Jamall Johnson requesting that Mr. McMillar's girlfriend purchase a magazine for a

firearm. [Doc. 179, pp. 17–20]. These messages had no probative value with respect to the charged offense and unfairly prejudiced the jury against Mr. McMillar by generally associating him with firearms even though there was no evidence that Mr. McMillar or his girlfriend procured a firearm accessory for Johnson.

The admission of this message violated Rule 403 of the Federal Rules of Evidence and amounted to plain error.

At trial, the Government introduced evidence that shooting victim Jamall Johnson sent a message to Mr. McMillar stating "Man plz go head and get yo girl tew order da pro meg xd 40." [Doc. 155, p. 210]. A Government witness testified that "pro meg xd 40" referred to a firearm magazine. [Doc. 155, p. 210]. The Government also introduced evidence that Johnson sent a link and photo of the magazine to Mr. McMillar. [Doc. 155, p. 210]. This evidence had no relevant purpose. A review of the trial transcript shows that the Government elicited the facts surrounding these messages but did not even attempt to tie them to the charged violations of § 922(g)(1). [Doc. 155, pp. 208–15]

The District Court justified admission of these messages by stating they suggested that Mr. McMillar, his girlfriend, and Mr. Johnson were "close associates" and that "information about firearm accessories, firearms accessories themselves, and firearms likely passed between the three of them." [Doc. 179, p. 18]. However, the suggestion that firearm information "passed between" them is unsupported. The

message merely shows an unfulfilled request by Johnson for a firearm magazine. The Government presented no evidence that Mr. McMillar ever replied to the request. [Doc. 155, p. 210]. Even if the messages were marginally relevant to the fact that Mr. McMillar and Mr. Johnson were acquaintances, their relationship was already firmly established by myriad other messages and testimony and thus admission of the text messages regarding the magazine was unnecessary. *See Lehder-Rivas*, 955 F.2d at 1518 (finding that courts should exclude highly prejudicial evidence where less prejudicial evidence establishes the same facts).

Moreover, the text message evidence was especially prejudicial because it invited the jury to convict based on the suggestion that Mr. McMillar was a felon with vague associations to firearms rather than on proof of actual possession under § 922(g)(1). That impermissible inference undermined the fairness of the trial.

The admission of the messages constitutes plain error. Under *United States v. Olano*, 507 U.S. 725, 732–37 (1993), plain error requires: (1) error; (2) that is plain; (3) that affects substantial rights; and (4) that seriously affects the fairness, integrity, or public reputation of judicial proceedings. All four prongs are met here. The error was clear, the text messages were immaterial and inflammatory, and — given the weakness of the overall evidence — it likely impacted the verdict. Finally, risking conviction based on tenuous associations rather than evidence of possession undermines confidence in the proceedings and warrants reversal.

## V. THE DISTRICT COURT ERRED IN EXCLUDING EVIDENCE OF MCMILLAR'S PRIOR ACQUITTAL

The District Court erroneously refused to admit evidence of Mr. McMillar's Georgia State Court acquittal of all charges related to the shootings underlying Mr. McMillar's two alleged violations of § 922(g)(1). [Doc. 179, pp. 20–21].

At trial, the Government's case depended on an inference that Mr. McMillar possessed the firearm in question in order to carry out murders on November 3 and November 5, 2018 of which a Georgia jury had already acquitted Mr. McMillar. [Doc. 166, p. 17]. Indeed, in its pretrial hearings, the Government admitted its case would "replicate" the evidence in Mr. McMillar's State Court trial. [Doc. 88, p. 8]. In this specific and limited context, it was relevant that Mr. McMillar had already been acquitted of the murders in question in a state-level trial. *See* Federal Rule of Evidence 401. In addition, evidence of acquittal should have been admitted to rebut the Government's extensive, unnecessary, and prejudicial introduction of information about the shootings. Any concern that such evidence might prejudice the Government's case or confuse the jury could have been allayed via a limiting instruction that the prior acquittal was only to be considered in relation to Mr. McMillar's alleged motive to possess the firearm.

Finally, in the specific context of Mr. McMillar's case, his prior acquittal was not hearsay because it met the definition of a public record because it was a "factual

finding" from a legally authorized investigation used against the government, *see* Federal Rule of Evidence 803(8)(iii), it was a statement concerning Mr. McMillar's state of mind, or because it fell within the broader residual exception to the hearsay rule as a highly probative finding that was subject to the trustworthiness inherent in the jury system, *see* Federal Rule of Evidence 807.

The exclusion of this evidence denied Mr. McMillar the opportunity to present a complete defense and rebut the prosecution's narrative. It was an abuse of discretion and contributed to the unfairness of the trial. *See Crane v. Kentucky*, 476 U.S. 683, 690 (1986) ("[T]he Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense.") (internal quotation marks omitted).

## VI. THE DISTRICT COURT ERRED IN ENHANCING MCMILLAR'S SENTENCE BASED ON ACQUITTED CONDUCT

The District Court erroneously enhanced Mr. McMillar's sentence under USSG §2K2.1(c)(1)(A) and USSG §2A1.1(a) by attributing first-degree murder to Mr. McMillar. Under the specific circumstances of Mr. McMillar's case, this was error because Mr. McMillar was acquitted of first-degree murder in Georgia State Court in a trial that involved the same underlying conduct.

This Court reviews a district court's interpretation of the Guidelines with deference and its factual findings for clear error. *United States v. Rothenberg*, 610 F.3d 621, 624 (11th Cir. 2010).

On October 17, 2023, Mr. McMillar was acquitted of charges of, among other things, murder, aggravated assault, and being a felon in possession of a firearm in Georgia State Court. [Doc. 166, p. 17]. On November 1, 2023, Mr. McMillar was charged in the instant case with § 922(g)(1) in relation to the underlying conduct for which he had been acquitted. [Doc. 1]. In its pretrial briefing, the Government openly and frankly admitted that its evidence at the federal trial would "replicate" what had been presented by the State of Georgia. [Doc. 88, p. 8]. Despite weak, circumstantial evidence, the Government's second prosecution was successful and the District Court enhanced Mr. McMillar's sentence on the ground that he had violated § 922(g)(1) in furtherance with the crime of First-Degree murder — conduct for which he had been acquitted in State Court. [Doc. 182, p. 1; Doc. 166, p. 11].

In November 2024, the U.S. Sentencing Commission amended its Guidelines to prohibit consideration of federally acquitted conduct when determining the applicable offense level. *See* U.S.S.G. §1B1.3(c) (Nov. 2024) ("Relevant conduct does not include conduct for which the defendant was criminally charged and acquitted in federal court. . . ."). The Amendment reflects a significant policy change that sought to "promote respect for the law by addressing some of the concerns that

numerous commenters have raised about acquitted-conduct sentencing, including those involving the 'perceived fairness' of the criminal justice system." U.S. Sentencing Guidelines Manual app. C, amend. 826 (U.S. Sentencing Comm'n 2024). Indeed, several Supreme Court Justices, have urged reconsideration of acquitted-conduct sentencing. *See, e.g.*, *McClinton v. United States*, 143 S. Ct. 2400, 2401 & n.2 (2023) (Sotomayor, J., Statement respecting the denial of certiorari) (collecting cases and statements opposing acquitted-conduct sentencing). Many states also prohibit consideration of acquitted conduct. *See id.* at 2401 n.2 (collecting cases).

In this case, the Government frankly admitted that its evidence at Mr. McMillar's federal trial would "replicate" that which had been presented in the Georgia state prosecution — where a jury acquitted him of the homicides used to enhance his federal sentence. [Doc. 88, p. 8]. In that context, the District Court's decision to impose a sentence enhancement for first-degree murder based on the same conduct nullifies the acquittal and signals a disregard for the jury's role in adjudicating guilt. Enhancing Mr. McMillar's sentence based on conduct a jury rejected — especially when the federal trial "replicate[d]" the state trial — does not promote respect for the law, but undermines it.

The policy rational of the Sentencing Commission's 2024 Amendment applies squarely here. The general presumption in favor of judicial discretion at sentencing

must yield when that discretion is used to impose punishment for conduct that was not just uncharged, but affirmatively rejected by a jury.

The enhancement of Mr. McMillar's sentence for first-degree murder — conduct of which he was acquitted by a state jury — was error. It violates the policies underlying the amended Guidelines and offends basic principles of due process and fairness. This Court should vacate Mr. McMillar's sentence and remand for resentencing without consideration of the acquitted conduct.

## VII. CUMULATIVE ERROR DENIED MCMILLAR A FAIR TRIAL

Even if this Court concludes that none of the individual errors discussed above requires reversal on its own, their cumulative effect deprived Mr. McMillar of a fair trial. The Eleventh Circuit recognizes that "an aggregation of non-reversible errors . . . can yield a denial of the constitutional right to a fair trial." *United States v. Baker*, 432 F.3d 1189, 1223 (11th Cir. 2005). Here, the improper admission of inflammatory evidence and hearsay text messages, along with the exclusion of Mr. McMillar's State Court conviction created an overall trial environment in which the jury was invited to convict based on passion and association rather than proof beyond a reasonable doubt.

Additionally, these errors must be considered in light of the relative weakness of the prosecution's case. The Government's theory relied heavily on circumstantial

evidence and inference that replicated the same State Court evidence that failed to persuade a Georgia jury. When combined with the taint of graphic photos, prejudicial text messages, and exclusion of the state acquittal, the cumulative impact undermined the fairness and reliability of the proceeding.

The Constitution guarantees not just a trial, but a fair trial. That did not occur here. Mr. McMillar respectfully requests that this Court reverse his conviction.

## CONCLUSION

For the foregoing reasons, Mr. McMillar respectfully requests that this Court reverse his conviction and remand with instructions to enter a judgment of acquittal on the grounds that the Government's *Giglio* violation in Grand Jury tainted Mr. McMillar's entire prosecution and that the Government's evidence was legally insufficient to sustain a conviction. *See supra*, Argument Sections I-II.

In the alternative, Mr. McMillar respectfully requests that this Court vacate Mr. McMillar's conviction and remand for a new trial due to evidentiary errors and cumulative error. *See supra*, Argument Sections III-V, VII.

In the alternative, Mr. McMillar respectfully requests that this Court vacate his sentence and remand for resentencing in light of his improper sentencing enhancement based on acquitted conduct. *See supra*, Argument Section VI.

Respectfully submitted,

*/s/ Tina E. Maddox*
Tina E. Maddox
State Bar of Georgia No.: 465511
Post Office Box 1343
Vidalia, Georgia 30475
(912) 537-3025
*Attorney for Defendant Victor R. McMillar*

## CERTIFICATE OF COMPLIANCE

The Appellant certifies that this brief uses a 14-point proportionally-spaced Times New Roman font and pursuant to Fed. R. App. P. 32(a)(7) this brief contains 9993 words.

## CERTIFICATE OF SERVICE

This day counsel served a copy of this Brief of the Appellant on the Government by filing it on the Court's CM/ECF portal, which generates a notice of electronic filing that is delivered to all counsel of record, along with a link to retrieve a file-stamped copy of this entire document.

This 14th day of July, 2025.

*/s/ Tina E. Maddox*
Tina E. Maddox